**AKJ INDUSTRIES, INC., Kenneth D. Burnside, and Daniel C. Deer, Appellants–Plaintiffs,**

v.

**MERCANTILE NATIONAL BANK, Appellee–Defendant.**

No. 45A05–0112–CV–546.

Court of Appeals of Indiana.

Nov. 22, 2002.

Rehearing Denied Feb. 5, 2003.

Michael W. Back, Crown Point, IN, Attorney for Appellant.

David C. Jensen, John P. Twohy, Eichhorn & Eichhorn, Hammond, IN, Attorneys for Appellee.

## OPINION

MATTINGLY–MAY, Judge.

AKJ Industries, Daniel C. Deer, III, and Kenneth D. Burnside (collectively, "AKJ") appeal the trial court's order granting summary judgment in favor of Mercantile National Bank ("Mercantile"). We affirm the trial court.

### FACTS AND PROCEDURAL HISTORY

Deer and Burnside formed AKJ in 1988. AKJ became a customer of Mercantile the same year, when it borrowed $300,000 from Mercantile. To secure this loan, AKJ gave Mercantile security interests in its inventory, accounts receivable, and

equipment. AKJ's stockholders, Burnside and Deer, executed the security agreements, a promissory note, and other loan documents on behalf of AKJ. Burnside and Deer also executed personal guarantees in favor of Mercantile.

AKJ's loan with Mercantile was renewed on several occasions. In the fall of 1995, the balance on AKJ's loan was approximately $729,000, with a credit line balance of $100,000. AKJ asked Mercantile to renew its existing loans, extend an additional $250,000 in credit, and to give AKJ a moratorium on its loan payments. Mercantile declined this proposal, instead agreeing to renew AKJ's existing loans and allow it to draw down the $100,000 remaining on its credit line. As a condition of the credit extension, Mercantile required Deer and Burnside to each contribute $100,000 to AKJ in the form of subordinated shareholder loans.

AKJ did not make the payment on its loan on February 23, 1996. In early March 1996, AKJ told Mercantile that it expected a revenue shortfall of $250,000 and asked Mercantile to furnish an additional loan for that amount and to suspend AKJ's loan payments. Subsequently, representatives of AKJ and Mercantile met on March 6, 1996 to discuss AKJ's financial situation. At that time, Mark McGuire, AKJ's chief financial officer, told Mercantile representatives that Deer and Burnside had not made the $100,000 subordinated shareholder loans that had been requested by Mercantile. McGuire also disclosed that AKJ had guaranteed four private investor notes totaling $600,000.

Mercantile ultimately decided to pursue remedies for AKJ's default. Mercantile sent a notice to AKJ's account debtors, directing them to send any payment due AKJ directly to Mercantile. On March 11, 1996, Mercantile's counsel sent AKJ, Deer, and Burnside an acceleration notice listing six events of default. On March 12, 1996,

AKJ faxed to Mercantile a proposal asking the bank to suspend collection efforts and allow AKJ to remain a bank customer. AKJ and Mercantile concluded a workout agreement on March 14, 1996. AKJ's credit line and term loan notes were combined into a single, new note with a maturity date of December 15, 1996. At AKJ's request, Mercantile extended the maturity date of the note to May 1997. In February 1997, AKJ obtained a loan at another bank, the proceeds of which were used to pay off the loan from Mercantile.

On June 10, 1998, AKJ, Deer, and Burnside filed a complaint against Mercantile, alleging breach of contract, negligence, actual and constructive fraud, interference with contractual and business relationship, and intentional infliction of emotional distress. On March 30, 2001, Mercantile filed a motion for summary judgment. On May 15, 2001, AKJ filed a brief in opposition to the summary judgment, together with a motion to strike seventeen of the exhibits designated by Mercantile. AKJ also submitted a response to Mercantile's statement of facts and affidavits from Burnside; Carl E. Thorne, an expert witness; and Michael W. Back, AKJ's counsel. In none of its filings did AKJ designate any contested issues of material fact, as required by Ind. Trial Rule 56(C).

Mercantile filed its reply in support of its motion for summary judgment on May 30, 2001. With its reply, Mercantile moved to strike the affidavits of Burnside, Thorne, and Back, and to strike AKJ's response to Mercantile's statement of material facts. It also filed a supplemental evidentiary designation.

On July 3, 2001, AKJ filed a sur-reply to Mercantile's motion for summary judgment, and moved to strike Mercantile's supplemental evidentiary designation. AKJ also filed a response to Mercantile's motions to strike the affidavit of Back and to strike portions of the affidavits of Burn-

side and Thorne. Mercantile then filed its reply in support of its motions to strike on July 12, 2001, together with a response to AKJ's motion to strike the supplemental evidentiary designation. Mercantile also moved to strike AKJ's sur-reply to the summary judgment motion.

On August 14, 2001, the trial court issued its order on the motions to strike and other procedural matters. The court denied AKJ's motion to strike Mercantile's designated exhibits and granted Mercantile's motion to strike portions of Burnside's affidavit. The trial court denied Mercantile's motion to strike the affidavits of Thorne and Back, but advised that it would not consider any legal conclusions contained in the affidavits. The court also granted AKJ's motion to supplement its summary judgment response and denied Mercantile's motion to strike AKJ's response to Mercantile's statement of material facts. Finally, the trial court struck Mercantile's supplemental evidentiary designation and granted Mercantile's motion to strike AKJ's sur-reply to the summary judgment motion.

The trial court held a hearing on Mercantile's summary judgment motion on August 21, 2001. On November 13, 2001, the trial court entered summary judgment in favor of Mercantile.

## DISCUSSION AND DECISION

In reviewing a grant of summary judgment, we are bound by the same standard as the trial court. Summary judgment is warranted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Horace Mann Ins. Co. v. Richards*, 696 N.E.2d 65, 67 (Ind.Ct.App. 1998); Ind. Trial Rule 56(C). Like the trial court, we may consider only those parts of the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and other matters that have been designated by the parties to the trial court for consideration. *Id.*

AKJ does not raise as an issue that the trial court erred when it struck some of AKJ's evidence. Thus, we must presume that the trial court acted within its discretion in granting that order and striking certain portions of the evidence AKJ offered in opposition to the motion for summary judgment.

Mercantile correctly points out that AKJ, in arguing that the trial court improperly granted summary judgment, refers to materials stricken by the trial court. AKJ neither argues nor provides authority that it may use the stricken evidence to support its allegations of error. Essentially, AKJ would have us reverse the trial court's summary judgment by using evidence that the trial court had explicitly stricken from the record. We must decline such an invitation. Once evidence is stricken from the record, it may not be used to further support a party's legal argument.[1] We will not consider evidence that has previously been stricken by the trial court to reverse that trial court's ruling on a motion for summary judgment.

The designated evidentiary matter remaining does not show that there are genuine issues of material fact. The trial court therefore did not err by granting summary judgment in favor of Mercantile.

Affirmed.

RILEY and ROBB, JJ., concur.

---

1. We recognize that it might be proper for this court to examine stricken evidence in a case where a party is arguing a trial court erred in granting a motion to strike. However, AKJ makes no such argument.